UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

**CIVIL ACTION NO. 06-116-JBC**

**JAMES C. ADKINS,**                                                                                            **PLAINTIFF,**

**V.**            **MEMORANDUM OPINION AND ORDER**

**JO ANNE BARNHART, COMMISSIONER,**
**SOCIAL SECURITY ADMINISTRATION,**                                                           **DEFENDANT.**

\* \* \* \* \* \* \* \* \* \*

This matter is before the court upon cross-motions for summary judgment on the plaintiff's appeal of the Commissioner's denial of his application for Supplemental Security Income and Disability Insurance Benefits (DE 8, 9).  The court, having reviewed the record and being otherwise sufficiently advised, will deny the plaintiff's motion and grant the defendant's motion.

**I. Overview of the Process**

Judicial review of the ALJ's decision to deny disability benefits is limited to determining whether there is substantial evidence to support the denial decision and whether the Secretary properly applied relevant legal standards. *Brainard v. Sec'y Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (citing *Richardson v. Perales*, 402 U.S. 389 (1971)).  "Substantial evidence" is "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).   The court does not try the case *de novo* or resolve conflicts in the evidence; it also does not

decide questions of credibility. *See id.* Rather, the ALJ's decision must be affirmed if it is supported by substantial evidence, even though the court might have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis. At Step 1, the ALJ considers whether the claimant is performing substantial gainful activity; at Step 2, the ALJ determines whether one or more of the claimant's impairments are "severe"; at Step 3, the ALJ analyzes whether the claimant's impairments, singly or in combination, meet or equal a listing in the Listing of Impairments; at Step 4, the ALJ determines whether the claimant can perform past relevant work; and, finally, at Step 5 – the step at which the burden of proof shifts to the Commissioner – the ALJ determines, once it is established that the claimant cannot perform past relevant work, whether significant numbers of other jobs exist in the national economy which the claimant can perform. *See Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); 20 C.F.R. § 404.1520.

**II. The ALJ's Determination**

The plaintiff is a forty-four-year-old male with a ninth-grade education. AR 17. He has past relevant work ("PRW") experience as a saw-mill worker, scrap-wire worker, press operator, dishwasher, welder, conveyer operator, truck unloader, and odd-jobs man. *Id.* He alleges disability beginning on April 10, 2003, as a result of depression, numbness, lightheadedness, lack of muscle control,

arthritis, a sprained ankle, and muscle weakness.  *Id.*  The plaintiff filed a claim for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") on April 25, 2003, which was denied initially and on reconsideration.  AR 16.  After a hearing held on April 6, 2005, Administrative Law Judge ("ALJ") Charles J. Arnold determined that the plaintiff did not suffer from a disability as defined by the Social Security Act.  At Step 1, the ALJ determined that the plaintiff has not engaged in substantial gainful activity.  AR 17.  At step 2, the ALJ found that the plaintiff's lumbar disc disease, left knee arthritis, and borderline intellectual functioning were severe impairments.  AR 18.  The ALJ then determined that the plaintiff's impairments did not meet or equal a listing in the Listing of Impairments at Step 3.  At Step 4, the ALJ found that the plaintiff could not perform his past relevant work.  AR 21.  The ALJ concluded at Step 5, based on the Medical-Vocational Guidelines, that the plaintiff could perform a significant number of other jobs in the national economy at the sedentary exertional level.  AR 21-22.  Notably, the ALJ found that the plaintiff did not suffer from a nonexertional limitation, despite the fact that he also concluded the plaintiff's borderline intellectual functioning was a severe impairment.  *Id.*

    **III. Legal Analysis**

    The only point of error raised by the plaintiff on appeal is that the ALJ erred in utilizing the Medical-Vocational Guidelines (hereinafter, "Grids") in his determination, at Step 5, that the plaintiff was not disabled.  The plaintiff correctly

points out that, when a social security claimant suffers from a nonexertional impairment, reliance upon the Grids requires reliable evidence that the claimant's nonexertional limitations do not significantly limit the range of work permitted by his exertional limitations. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987); *see also Abbott v. Sullivan,* 905 F.2d 918, 926-27 (6th Cir. 1990). A mental impairment must produce work-related limitations that significantly affect the claimant's ability to perform a full range of work at a given exertional level before a mental impairment precludes the use of the Grids. *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990); *Buress v. Sec'y of Health and Human Servs.,* 835 F.2d 139, 142 (6th Cir. 1987). In this case, the ALJ determined that, although the plaintiff's borderline intellectual functioning was a severe impairment, it did not amount to a nonexertional limitation on his ability to work at the sedentary level. Thus, the core issue the court must decide is whether this determination was supported by substantial evidence.

In determining that the plaintiff's intellectual functioning did not amount to a nonexertional limitation, the ALJ assigned "[s]ignificant weight to Dr. [Robert Jack] Eardley's mental assessment of August 8, 2003, as it is consistent with [the ALJ's] observations and tests administered, with the claimant's work history, and with other mental status reports of record." AR 21. Dr. Eardley noted that the plaintiff was able to "make personal and social adjustments" and that he had the "ability to understand, remember, and carry out instructions." AR 228. He did find that the

4

plaintiff's behavior "suggest[ed] depressive factors" but ultimately found that the plaintiff had only a non-severe depressive disorder based on "the claimant's subjective statements." AR 227-28. On March 2, 2005, the plaintiff was examined by Dr. Timothy Carbary, Ph.D. Dr. Carbary diagnosed the plaintiff with major depressive disorder, generalized anxiety disorder, attention deficit hyperactivity disorder, and reading and math disorders. AR 266. However, Dr. Carbary recommended only long-term counseling and indicated that, even if the plaintiff were found to be disabled, he should be trained for "re-entry into the workforce." AR 267. Dr. Carbary also found the plaintiff to have a Verbal Intelligence Quotient ("IQ") score of 85, a Performance IQ score of 73, and a Full Scale IQ score of 77. AR 268. These results were consistent with the plaintiff's Performance IQ score of 80, Verbal IQ score of 76, and Full Scale IQ score of 77 recorded by William Lynne, M.S., on December 28, 1998. AR 171.

  The ALJ did not err in finding that the plaintiff did not suffer from a nonexertional limitation. The ALJ noted the plaintiff's low IQ scores but found that the plaintiff had an adequate ability to relate, concentrate, and persist; a minimally adequate ability to reason and comprehend; mild to moderate limitations in dealing with work stress; and limited to occasional contact with the public. AR 20. He also opined that the plaintiff's daily lifestyle did not indicate debilitating functioning. *Id.* The ALJ also noted that the record showed that the plaintiff was able to "learn, understand, and carry out simple, routine tasks under ordinary supervision," as

5

reflected by his good work history.  AR 21.  To the extent that the ALJ relied on the opinions of Dr. Eardley over those of Dr. Carbary, this was not error; it is the ALJ's duty to "weigh all the evidence and resolve significant conflicts in the testimony."  *Bradley v. Sec'y of Health and Human Servs.*, 862 F.2d 1224, 1227 (6th Cir. 1988).  The ALJ properly considered all the evidence in the record, and his finding that the plaintiff did not suffer from a nonexertional limitation was supported by substantial evidence.

The plaintiff also claims that the ALJ erred in failing to conclude that he suffered from a nonexertional impairment based solely on his twice-recorded Full Scale IQ score of 77.  In support, the plaintiff cites *Salmi v. Sec'y of Health and Human Servs.*, 774 F.2d 685, 693 (6th Cir. 1985), and *Abbott*.  Neither of these cases, however, mandates that an ALJ find a per se nonexertional limitation based on a Full Scale IQ score of 77.

In *Salmi*, the Court of Appeals held that the ALJ's finding that a claimant's mental retardation was not a severe impairment was erroneous where the claimant had an IQ of less than 80.  The present case differs from *Salmi* in that ALJ Arnold did find that the plaintiff's diminished intellectual functioning was a severe impairment but also found that it did not amount to a nonexertional limitation.  The court in *Salmi* did not suggest that an IQ score below 80 automatically requires a finding that a claimant has a nonexertional limitation.  In any event, the Ruling on which the *Salmi* court based its holding was subsequently rescinded.  *See Halcomb*

6

*v. Bowen,* 819 F.2d 289, *3 (6th Cir. 1987); *Lovejoy v. Comm'r of Soc. Sec. Admin.*, No. 3:99-CV-7575, 2000 WL 1675546, at *5 (N.D. Ohio Sept. 29, 2000) ("[T]he *Salmi* decision should no longer be interpreted as a bright-line rule that an IQ of less than 80 should always be considered a severe mental impairment.") (citing *Colwell v. Chater*, 98 F.3d 1341, *3 (6th Cir. 1996)).

Further, the Court of Appeals in *Abbott* did *not* hold that an IQ score of 78 resulted in a nonexertional limitation that would preclude the ALJ's use of the Grids. Rather, the court's reference to an IQ score of 78 related to an example in a federal regulation that stated that a finding of disabled was not precluded for an illiterate individual with an IQ of 78. *See Abbott*, 905 F.2d at 927 (citing 20 C.F.R. pt. 404, subpt. P, app. 2 § 201.00(h)). Notably, the example in question was later removed from the Code of Federal Regulations based partially on the fact that it was "unclear and [had] been misinterpreted." 66 Fed. Reg. 45162-02. Moreover, the *Abbott* court also rejected the very argument that the plaintiff now presents to this court – namely, that the "example directs a finding of disabled whenever a claimant's case presents analogous facts." *Abbott*, 905 F.2d at 927 ("We cannot agree with the plaintiff's expansive reading of an example intended merely to illustrate the limited applicability of the grid."). In this case, the ALJ did not err in failing to conclude that the plaintiff suffered from a nonexertional limitation based solely on his Full Scale IQ score of 77.

**IV. Conclusion**

In sum, the court holds that the ALJ's finding that the plaintiff's borderline intellectual functioning and other mental health problems did not amount to a nonexertional limitation on the plaintiff's ability to perform sedentary work was supported by substantial evidence. It follows from this conclusion that the ALJ did not err in using the Grids, and not a Vocational Expert, to assess the plaintiff's ability to perform jobs in the national economy at Step 5. Accordingly,

**IT IS ORDERED** that the Commissioner's motion for summary judgment (DE 9) is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff's motion for summary judgment (DE 8) is **DENIED**.

Signed on November 30, 2006

JENNIFER B. COFFMAN, JUDGE
U.S. DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY